**Peter James RACKLEY, Petitioner**

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 18, 2005.
Decided Aug. 23, 2005.

Michael J. Romance, Sunbury, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge.

Opinion by Judge LEADBETTER.

Peter James Rackley petitions for review of a determination of the Pennsylvania Board of Probation and Parole (Board) that dismissed his administrative appeal from the rescission of his parole. We affirm.

In March 2004, Rackley was paroled from his sentence resulting from convictions for conspiracy to commit burglary and involuntary deviant sexual intercourse. Rackley was actually released on June 14, 2004, and his parole included a special condition proscribing any contact with minor children. Based upon a report of a fellow inmate that Rackley offered to go to the inmate's home and take pictures of his young children, the Board filed a detainer and Rackley was arrested on June 30, 2004. A parole rescission hearing followed.

Over counsel's hearsay objection, a parole agent testified that a sergeant from SCI–Frackville provided her with a letter and notarized statement from an inmate that stated that Rackley asked the inmate whether his children were visiting him or sending him mail or pictures. According to the inmate's notarized statement, he told Rackley, "no" and "[Rackley] [then] asked [him] if [he] would get [Rackley] [his] address before [Rackley] left. [Rackley] would go to [the inmate's] house & take pictures of [the inmate's] kids as they played & send them here." Rescission hearing of July 9, 2004, State's exhibit 2. The hearing examiner admitted the letter and notarized statement.

The parole agent also testified that, when she arrested Rackley, she told him about the letter and statement and indicated her understanding that the conversation reportedly happened between June 7 and 14. According to the agent, Rackley told her that the incident happened earlier, in May, and had been taken out of context. According to the agent, Rackley told her that he offered to take pictures of the children because the mother would not bring them to visit their father.

Rackley testified that he misstated the date to the parole agent and that he actually spoke to the inmate about the pictures in March, not May. According to Rackley, the inmate approached him about taking pictures and Rackley told him that if he was paroled in the vicinity of the inmate's house, he would ask the inmate's wife to send pictures of the children. Rackley further testified that he told the inmate that he could not take the pictures because he was not allowed around children. According to Rackley, the inmate was fabricating the story to hurt him because he is a child sex offender. Thereafter, the Board rescinded Rackley's parole on the basis of good cause. The subsequent request for administrative relief was dismissed on the basis that, unlike a revocation, administra-

tive relief may not be had for a decision rescinding parole. This appeal followed.

▮▮▮ Before addressing Rackley's appellate arguments, we note that a parole rescission differs from a parole revocation. A rescission "is based upon information or facts arising prior to the inmate's release on parole, while a revocation arises only when an inmate already at liberty on parole violates a term or condition of that parole or is convicted of a crime while on parole." *Lord v. Pa. Bd. of Prob. & Parole*, 135 Pa.Cmwlth. 225, 580 A.2d 463, 464 n. 1 (1990). The Board may rescind a grant of parole prior to an inmate's actual release date without prior notice or a due process hearing. However, once an inmate's parole has been "executed," that is, the Board has issued a release order and the inmate signs an acknowledgment of parole conditions, the Board must provide the parolee with notice and a hearing prior to rescinding parole. *Id.* at 464–65.

▮▮▮ Turning to Rackley's appellate arguments, we note that he first contends that the hearing examiner erred in admitting the hearsay statements of the inmate, thereby denying him the right to confront and cross-examine an adverse witness. We agree that the hearing examiner erred in admitting the inmate's letter and notarized statement without first making the required finding of good cause to deny the right to confront and cross-examine. *See Jefferson v. Pa. Bd. of Prob. & Parole*, 95 Pa.Cmwlth. 560, 506 A.2d 495 (1986). However, the Board's decision is sup-

ported by the statements of the parole agent, who testified that Rackley admitted that he offered to take pictures of the inmate's children. This testimony is admissible as a statement against interest, an exception to the hearsay rule. *Hobson v. Pa. Bd. of Prob. & Parole*, 125 Pa.Cmwlth. 38, 556 A.2d 917 (1989). Thus, the error does not command a reversal.

▮▮▮ Next, Rackley argues that his alleged conduct cannot serve as the basis for rescission because it occurred prior to his release and, therefore, the information was presumably available to the Board when it granted him parole.[1] Our review of the appellate decisions of this Commonwealth has not revealed any case law discussing this issue. However, under the federal scheme, a prisoner's scheduled release date may be postponed or retarded upon the receipt of new and significant adverse information. *See* 28 C.F.R. § 2.28(f). The federal courts have interpreted this to allow the United States Parole Commission to act upon information that existed at the time of the initial parole determination but was not considered by the Commission at that time. *See Frassetto v. Perrill*, 955 F.2d 176 (2d Cir.1992); *Fardella v. Garrison*, 698 F.2d 208 (4th Cir.1982); *Ready v. U.S. Parole Comm'n*, 483 F.Supp. 1273 (M.D.Pa.1980). *Accord* Wile, Pennsylvania Law of Probation and Parole § 8:22 (2003). We conclude that this approach is reasonable and furthers the goals of the act commonly referred to as the Parole Act.[2] Therefore, we adopt the approach in this Commonwealth and conclude, based there-

---

1. There is no contention that the Board lacks the authority to rescind parole once executed.

2. Act of August 6, 1941, P.L. 861, *as amended*, 61 P.S. §§ 331.1–331.34a. Section 1 of the Parole Act provides that:

    The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the

opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.

    In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by

on, that the Board properly considered such information since it was not considered at the time that Rackley's parole was executed.[3]

■ Finally, Rackley implies that his actions did not provide a sufficient basis to rescind his parole. Specifically, in the last two sentences of his argument, Rackley contends that: "Moreover, even if petitioner did inquire about [the inmate's] children, constitutionally protected free speech is not a violation of his parole conditions." Petitioner's relevant parole condition mandates, "No contact with minor children'. Petitioner never made any contact with [the inmate's] children." Rackley's appellate brief at 9. We need not address this last argument because it has not been preserved for review. Rackley did not raise it during his hearing, and he failed to raise it in either his request for administrative relief or his petition for review to this court. Accordingly, it is waived.

Based upon the foregoing, we affirm the order of the Board.

### ORDER

AND NOW, this 23rd day of August, 2005, the order of Pennsylvania Board of Probation and Parole in the above captioned matter is hereby AFFIRMED.

ensuring the custody, control and treatment of paroled offenders.
61 P.S. § 331.1. Moreover, in exercising its power of parole, the Board must consider whether the interests of the Commonwealth will be injured by the grant of parole. Section 21, *as amended,* 61 P.S. § 331.21.

3. There is no contention that the Board considered this information or similar allegations at the time it granted Rackley parole. Indeed, in his petition for writ of mandamus

(treated as a petition for review), Rackley avers that the information was reported to the Department of Corrections sixteen days after he was released from custody. We note that the inmate's letter is dated June 18, 2004, and his statement is dated June 30, 2004, and notarized on that same date, thereby supporting the conclusion that this specific information could not have been considered by the Board prior to Rackley's parole.